Your honors, the issue before the court very briefly is, is there a reasonable expectation of privacy in a case that is locked, regardless of the fact that there might be some reasonable suspicion that that case contains firearms or a firearm? Your honors, this case came up when a police officer opened a case. The record indicates that the case was indeed locked. The circumstances indicated that there would be a reasonable suspicion to suspect that the case contained firearms. There's some dispute on precisely what happened at the time. In fact, the officer who testified who was there and who conducted the search, the report that he wrote, his testimony at the first suppression hearing and his testimony at the second suppression hearing is so contradictory that it is simply impossible to conclude that the government met its burden. It is without dispute now, I think, that there were padlocks on the case. The district court relied on U.S. v. Huffines and other cases, primarily a Supreme Court case which stated that there is no expectation of privacy in a gun case. Those cases all sprang from the footnote, I believe it's the Sanders case, Arkansas v. Sanders, in which the Supreme Court said that there are some containers whose distinct configuration are such that there's no expectation of privacy. We don't have that kind of situation here. We have a basically nondescript case. One of the officers defined it as being three, three-and-a-half feet long, maybe a foot, foot-and-a-half wide, and about six to eight inches high. At the hearing and attached is the appendix to the opening brief, we submitted photos of the case as well as photos of gun cases that may have been the type of cases that would be subject to gun cases not providing an expectation of privacy because of their unique configuration. In this case, your position is some gun cases are configured in a way so that there's no expectation of privacy, no reasonable expectation of privacy, but that the particular case here was of such a nature that there is an expectation of privacy. In other words, it could have, your position is it could have been carrying something other than a rifle. That's correct. And what could it have been? What could it have been carrying? It could have been an electric guitar, one of the exhibits submitted to the district court. And in the brief as the appendix are printouts from Web pages, advertising cases, music cases. Is this, you have appended as part of your opening brief, right, several photos? Yes. This 102 is the case that's involved, the Bushmaster case? Yes, Your Honor. So what's the approximate dimension for that? For instance, is it about as long as the width of that lectern? Is it about that long? A little bit longer. A little bit longer. And how wide is it? Eight to ten inches? Twelve inches? Your Honor, I'm speaking from memory now, as well as the photograph. I believe it's probably closer to 18 to 24 inches. So about 18 inches this way and about four feet on the left. Maybe not quite four feet. And how deep is it? Three or four inches? Maybe five or six. So it's an oblong rectangular container, right? Yes. It's not configured like, say, a long gun or a rifle or a shotgun. And it's not configured like many of the cases or many of the gun cases in exhibits. I believe they would be 106 through 112, which are cases, particularly, I've just flipped to 109, a case there that does have a distinctive shape. Looking at the case, you don't see an outline of a, you know, a muzzle of a gun compared to where the trigger would be, like on some of those cases. In the cases that we're talking about here, no.  In fact, the government. In effect, you're saying that on many of these cases, any darn fool would think that there were, there was a gun in it. Just as if you had a hand grenade, anybody would think there were explosives in it. I take it that's your point here. Maybe an expert could tell, but maybe I couldn't. I would stress not even an expert could tell what was in that case. The government's own witnesses said that. Officer Huffines, who is the person that broke into the case, volunteered the information that. I'm sorry, what did you, that he said what? That he volunteered the information that this particular case could be used for property other than firearms. What about the fact that it says Bushmaster on it? Is that a known manufacturer, Bushmaster? The name of a famous guitar maker, right? Pardon me? Name of a famous guitar maker. I just didn't know. That's why I was asking. I didn't know if it was a guitar name or a gun name. If it said Remington, I'd know it was a gun name. Although I believe Remington's name is also attached to other things. The other officer who was at the scene was not present when the gun case was broken into, was not immediately present. There, I believe he testified that he was sitting in his squad car with one of the other people who had a warrant, testified that if he sat the gun case in front of him closed, he would not be able to tell what was in it. No, but also one of the officers said, well, you know, I recognize the Bushmaster. It's the same thing we use. Didn't he say that the police department uses? That's correct. So he recognized it, you know, just like that. Recognized it as a gun case like what they use. Right. But that gun case, and I think that we didn't dispute in the district court that it was in fact a Bushmaster case that was made for guns. But the officers also testified that it can contain any property. The fact that it was recognized as a gun case does not tell us what's in it when the witnesses. Were there other cases or photographs of other cases in evidence that look similar to the Bushmaster case? The only photographs were what we submitted and what's contained as the appendix. Those were those were submitted to the trial court as part of the suppression hearing. Yes. I mean, like, for instance, these these fender cases, the guitar cases. Those were submitted. Photos were before the district court. Yes, they were. And some of those look I can't make out the name, but there's a name in the corner. But the dimensions on some of those look roughly. Oh, they roughly approximate the the Bushmaster case in size and shape and color and opaqueness. Right. That's correct. Did you want to reserve a little rebuttal time? I did, Your Honor. If there are no further questions further now. OK, why don't you take a little time for rebuttal? OK, Mr. Jacobs. May it please the court. Good morning, Your Honors. Your Honors, there is no reasonable expectation of privacy in those cases. Those cases, it was clear to Officer Holzer. Wait a minute now. We're not talking about all the cases. We're just talking about one case, aren't we? We don't care about the others. Yes, Your Honor. That's correct. In that in that plastic gun case. And as your honor correctly noted during the suppression hearing, Officer Holzer testified that he recognized those case that case because it resembled the exact type of black plastic case that the Liberty Lake Police Department uses to maintain their. That's semi-automatic weapons. That's not the standard, is it? If the police department used a shoebox to carry his guns in, it wouldn't mean he could open every shoebox because he recognizes shoeboxes as being gun containers. Furthermore, it's not what some expert thinks, I thought. It has to be that some idiot who doesn't know anything about gun cases like me, who's wandering around and sees a guy carrying something, says, oh, there's a guy carrying a gun. It's got to be that kind of thing, doesn't it? Your Honor, this case involved, well, the plastic case involved in this case can't be analogized to a suitcase. It can't be analogized to a cardboard box. Why can't it be analogized to a guitar case? Well, I don't really think it looks like a billiard cue case from based on my youth. But, you know, why couldn't someone walking in the street think it had a guitar or a pool cue in it? Your Honor, if the court looks at the photographs that were attached to Mr. Smith's brief, looking at those photographs between the plastic Bushmaster case and the guitar cases, there's a very, very significant difference. The Bushmaster plastic case that contained that sawed-off shotgun is narrower. It's got different type of clasps on it. It also has Bushmaster on it. The guitar cases that Judge Gould's referring to, it's got a ‑‑ And you heard Judge Gould's question to Mr. Smith, and what does Bushmaster mean? And most people don't know what Bushmaster is associated with weapons, right? As Judge Fernandez said, the test is, you know, the ordinary person, not the police expert. And most people don't know what Bushmaster means. Is it only associated with weapons? Pardon, Your Honor? Do you know for a fact that Bushmaster is only associated with weapon cases, nothing else? For a fact, I don't, but I've heard Bushmaster used in the context of weapons, Your Honors. Probably if you started to manufacture a rifle and put the name Bushmaster on it, you'd get a trademark suit against you. But if you manufactured a pool cue called Bushmaster, I don't know whether you would or not. Your Honor, again, the touchstone of any Fourth Amendment analysis is what was reasonable. What the officers do in this situation, was it reasonable? And is the test, as Judge Fernandez is suggesting, it's not what the officers subjectively knew, but what an ordinary citizen would know? In other words, is the legal test that we have to apply whether an ordinary citizen would view this sort of like a gun in plain view? I believe that's the correct test, Your Honor. And that's what the United States is arguing, is that this case effectively had its contents in plain view. The problem with the plain view is obviously if something is shaped like a gun, like a lot of gun cases, or like a holster, it's true, something else might be in it. But it's kind of like tearing a box that says .22 caliber ammunition on it. You're kind of announcing that that's what you're carrying. That's easy, because anybody would say, gee, there's probably a gun in that. And so the person subjectively has given up his right to pretend that there's not a gun in there. The crossover is when you've got a somewhat nondescript case. How do you deal with that? It's not like the paper bag is shaped like a gun. It's not like a gun case is shaped like a gun. Your Honor, I'm thinking of Arvizu v. United States, which I didn't cite in my brief. But I believe an officer is allowed to take into account the totality of circumstances. And there are a number of factors that can go into the search, one of which is the subjective knowledge of the officer. And looking at the circumstances in this case, you had a police officer responding to ---- Well, wait a minute. Yes, Your Honor. This case was put to the district court and brought here strictly on plain view. It hasn't been argued to us up to this moment, really, or presented as a case. Well, think of the circumstances. People are out shooting. These guys are coming down from shooting, blah, blah, blah, blah, blah. I don't think that's in front of us. The question is plain view of this piece of ---- Yes, Your Honor. And the United States, the cases that it cited in its brief, the Huffings case cited in 1992, I believe, by the Ninth Circuit, the Miller case, and then footnote 13 in Arkansas v. Sanders, where the Supreme Court in footnote 13, and I believe it cites the Harris case, another Supreme Court case, says that there are gun cases are not entitled to Fourth Amendment protection. Gun cases as well as a kit of burglar tools are not entitled to ---- So this case should not be entitled to the same protections given to a suitcase, a briefcase. That's an interesting thing. Maybe you know the answer. But the Supreme Court, of course, we realize they know what they're doing and what they're talking about. What in the world do the kit of burglary tools look like? Your Honor, I'm sorry I can't answer that question. I mean, I assume that they're envisioning something that looks ---- When you look at it, you say, my gosh, that's the kit of burglary tools. No. I can't answer that question, Your Honor. It's not really completely out the wall. It's sort of tied into this gun case notion, too. I don't quite understand what is in mind when they say gun case and they couple it with kit of burglary tools. Are they talking about anything that could hold a gun or anything that could hold burglary tools? That's a shoebox. I don't know. And you're telling us you want us to follow what they said. So what in the world did they really say? Your Honor, the United States' position is that that was a case by whose contents you could discern, by whose nature you could discern its contents. It's the distinctive shape that leads you to know what the contents are. That is correct. Here there's an argument that this gun case is like that because it's relatively, you know, thin. It's not real deep, typical of a gun case, I think. But on the other hand, it may be deep enough so that it could be holding other things. So that's sort of the problem I'm having. Let me ask this, just so I understand this practically. If the police had thought that there was an expectation of privacy in the case, what procedures are available to them? In other words, could they seize the case and then get a warrant and search it? Or what would be the alternatives to what they did? That would be an alternative, Your Honor. Did they have probable cause to get a warrant? The United States believes that they would have because they were responding to a complaint by a citizen of an individual who had pointed a weapon at that person and then pivoted 90 degrees away and fired off two shots. But is that a federal violation? Well, it was a violation of a they were in a no-shooting zone and there was a criminal trespass. They were on private property. But that was an anonymous complaint, one. And two, when the police went, they said they had permission from the landowner, right? What is the probable cause? What's the violation? Well, the violation, Your Honor, is they were firing that weapon in a no-shooting zone, which violated a county ordinance. Okay. Thank you, Your Honor. Many thanks for the argument. And, again, thank you all. Thank you, both of you. Now, Mr. Smith, you've got one minute, nine seconds. If we could round it up to two minutes, I'm sure. I think we could round it up to one minute and ten seconds. Thank you. We'll see how fast I can talk. Your Honors, the question came up of could the cases be seized. Of course, that's not an issue that we're confronted with because that's not what happened. But I did discuss in the brief and I like this to mail cases where there has been permission to seize mail, take it out of the stream of the mail until a warrant can be issued. Even in this case, if there had been something that would have supported a warrant, I think the officers could have taken that approach. Now, it may very well be that had they done that, I'd be here arguing that they couldn't. But they did not do that. Property can be seized for what I have argued is an unreasonable period of time in order to obtain a warrant. They could have done that here. In the totality of the circumstances, again, it was, is it plain view? Is it an ordinary citizen or is it some kind of expert? I cannot tell a gun case. Prior to this case, I didn't even know Bushmaster was a gun manufacturer, so that wouldn't have helped. But we did have an expert. We had Officer Johnson, who testified that if you sat that case in front of him, he wouldn't know what was inside of it. If it's not clear that it can be seized subject to getting a warrant, and at least it appears Judge Tashima has some question about that, then it seems to me it puts the police in kind of a tough situation where they've got a complaint that somebody's been pointing a rifle at a citizen. They see someone carrying a case that is not perfectly outlining a rifle but looks like it could have a rifle, and if they're not allowed to open it to check, what is their alternative? Your Honor, I think that there is case law that they could have seized it temporarily for the purpose of getting a warrant. There are kind of like the mail and run more checks or gone to get a warrant for it. Yes, and I believe and I don't have the case on top, off the top of my head. They'd have to get a warrant on probable cause then? Yes. So if they didn't have probable cause, then the whole thing would fail, I guess. Maybe that's what the law would require. That's correct, in my view. And, Your Honor, the argument here, if a case such as this, particularly when it's locked, and I think that's very important. This case was padlocked, and I did mention the case that talks about the significance of a container being locked. It's not necessary, but it certainly adds to what ordinary citizens would consider as something that we're doing to protect our privacy. Well, we've got your briefing. I've taken you over your time with my questions. Thank you, and we appreciate the argument. And the case will be submitted. And, again, we thank counsel for making the pleasant trip over the mountains. Thank you. Wally, can you hand me that? Thanks. I am.
judges: Fernandez, Tashima, Gould